**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MILLARD G. DOYLE,**

    **Plaintiff,**

-vs-                **Case No. 6:11-cv-645-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. The Court finds that oral argument would not add materially to the issues argued in the briefs.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed for a period of disability and disability benefits on March 5, 2007, alleging an onset of disability on February 16, 2006, when on vacation, experienced a detached retina in the right

eye; he has had five to six surgeries and had repeated detachments; he also suffers from depression. R. 34-36, 46, 82-83, 91, 103-09, 151, 163, 188. His application was denied initially and upon reconsideration. R. 82-94. Plaintiff requested a hearing, which was held on February 20, 2009, before Administrative Law Judge Jose G. Rolon-Rivera (hereinafter referred to as "ALJ"). R. 23. In a decision dated June 12, 2009, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 13-23. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council ("AC") granted, subsequently issuing a partially favorable decision on March 25, 2011. R. 1-8. The AC found Plaintiff disabled as of August 16, 2008 (his fifty-fifth birthday). Plaintiff filed this action for judicial review on April 20, 2011. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was 52 years of age on the alleged onset date and 55 years of age on the date of the hearing. R. 105, 151. Plaintiff completed two years of college, and worked as a commercial airline pilot from 1989 to 2006. TR 164, 167.

Plaintiff's medical history is set forth in detail in the ALJ's decision, and adopted by reference in the AC decision. *See* R. 5, 13-23. Plaintiff alleged disability based on a torn retina and depression. R. 36, 42. After reviewing Plaintiff's medical records and Plaintiff's testimony, the AC found that Plaintiff suffered a visual impairment, which was a "severe" medically determinable impairment, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 7. The AC gave significant weight to the opinion of Glenn Bigsby, III, D.O., a state agency physician, who reviewed the Plaintiff's medical records and found him limited to light work with restrictions in near and far acuity as well as depth perception. R. 6. The AC determined that Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of light work, *i.e.*, with additional restrictions in near and far acuity as well as in depth perception. R. 7. Based upon Plaintiff's RFC, the AC determined that he could not perform past relevant work as a commercial airline pilot. R. 7. Considering Plaintiff's vocational profile and RFC, the AC applied

the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded: as of Plaintiff's alleged onset date, at age 52, he would be not disabled; however, with the attainment of age 55 on August 16, 2008, Plaintiff's additional nonexertional limitations significantly affect his RFC and he would be unable to make a vocational adjustment to other work in the national economy, thus, within the grids at age 55 he would be considered disabled. R. 7. The period in dispute is February 16, 2006 (the alleged onset date) to August 16, 2008 – the date the AC found Plaintiff was entitled to disability benefits. *See* R. 5-8.

Plaintiff now asserts three points of error. First, Plaintiff contends the ALJ erred by finding that his depression was not severe. Second, he claims the ALJ erred by finding he had the RFC to perform sedentary work contrary to his treating physician's statements. Third, he argues that the AC erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony (or relying on the VE testimony that the ALJ heard at the hearing), because Plaintiff suffered non-exertional impairments. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.  ISSUES AND ANALYSIS

### A.  RFC and the treating physician's opinion

Plaintiff argues that the opinion of his treating eye surgeon, Dr. Gary Ganiban, was improperly evaluated by the ALJ and the AC. Plaintiff also contends that the ALJ substituted his own vocational opinion for that of the VE, and the AC never even discussed Dr. Ganiban's opinion, but relied instead exclusively on the opinion of Dr. Bigsby, a non-examining physician. Doc. 15. The Commissioner

argues that Dr. Ganiban's RFC statement does not establish Plaintiff was disabled prior to August 16, 2008[1]. Doc. 16.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Gary Ganiban, M.D. of the Florida Eye Clinic, treated Plaintiff beginning in February 2006. R. 298. He performed the first (unsuccessful) surgery on Plaintiff's right eye on March 20, 2006. R. 302. On February 13, 2009, Dr. Ganiban completed a Vision Impairment Residual Functional Capacity Questionnaire. R. 340. He noted that Plaintiff only experienced light perception in his right eye and was considered legally blind in the right eye. R. 341. Dr. Ganiban noted that Plaintiff had lost his depth perception and would have difficulty walking up or down stairs, he would need to take

---

[1]The Commissioner notes that Dr. Ganiban completed the form six months after Plaintiff's established onset date of August 16, 2008 and it does not expressly reference Plaintiff's condition prior to onset, therefore, according to the Commissioner, "its relevance is marginal at best." Doc. 16 at 7. The Court disagrees under the circumstances of this case where Plaintiff's repeated retina detachments make the condition in his right eye a permanent severity, which would only be known over a space of months or years. In addition, the records contains the treatment records from Dr. Ganiban for the full time period at issue.

unscheduled breaks during the workday in order to put in eye drops, and his attention and concentration needed to perform simple work tasks would be occasionally affected. R. 341-42.

The Commissioner argues that Dr. Ganiban's responses on the "check-box" form does not preclude Plaintiff from work, and indicated Plaintiff is capable of avoiding ordinary workplace hazards, and with small and large objects; he also did not quantify the number of breaks Plaintiff would need. Doc. 16 (citing R. 341). In addition, the Commissioner contends, Plaintiff's testimony that he watches television for up to four hours a day, drives an automobile up to 20-25 miles locally, and does not have a restricted license undercuts Plaintiff's argument that his disability began prior to August 16, 2008. R. 38-39.

The Commissioner also argues that Dr. Ganiban only noted (on the form) Plaintiff's problems with his right eye and did not document any left-eye problems (Doc. 16 at 7, citing R. 341), arguing as if Plaintiff had *no* problems with his left eye, when in reality, Plaintiff's testimony and Dr. Ganiban's treatment notes consistently indicate that Plaintiff was having problems in his left eye that were a precursor to a detached retina in that eye as well. Plaintiff testified, and Dr. Ganiban's notes indicate, that the detached retina in Plaintiff's right eye started out when he developed black floaters in that eye (*see* R. 298), and the eye finally clouded up and filled with fluid – "like a dark curtain"– because the retina had detached. R. 41, 298. Plaintiff described how he had such elongated retinas in both eyes – as a hereditary condition – that the doctor told him they were the most elongated retinas "he had ever seen"; the elongated retinas made him predisposed to detached retinas. R. 34, 41. Plaintiff also developed black floaters in his left eye which made it difficult to focus and he had to pause for a second to wait to focus. R. 40, 188.

The problems with the detached retina and loss of vision in Plaintiff's right eye are undisputed. Dr. Ganiban described Plaintiff as legally blind in his right eye. R. 340. Even after five surgeries to correct it, the retina in Plaintiff's right eye repeatedly detached, and the silicon oil inserted in the right

-6-

eye increased the pressure and made it sensitive and caused the eye to tire easily. R. 34, 40, 46. Plaintiff wore glasses that completely obscured the right eye because it was a blind spot and distracting when uncovered, and he really had no depth perception. R. 42, 44. He was told that he would not regain correctable vision in his right eye. R. 48.

Along with the undisputed severe problems in Plaintiff's right eye, Dr. Ganiban's treatment notes consistently described floaters in Plaintiff's left eye from a few months after he started treating Plaintiff in August 2006 through Dec. 2007[2]. R. 206, 231, 264, 274. Plaintiff testified that he was still experiencing floaters in his left eye at the time of the hearing on February 20, 2009. R. 40.

The AC adopted the RFC opinion of non-examining physician Dr. Bigsby. R. 6. Dr. Bigsby noted in reviewing the treatment records to reach his opinion, that Dr. Ganiban's notes reflected at a follow up exam in August 2007 that Plaintiff had a "hazy membrane on the left eye." R. 221. Although Dr. Bigsby checked off on the SSA form that Plaintiff was limited in near and far acuity and depth perception under "visual limitations," he merely noted in one sentence Plaintiff's vision in each eye, giving the left one "20/25." R. 223. Even though checking "limited" required an explanation and citation to specific facts, Dr. Bigsby merely noted the visual acuity in the left eye and made no mention of the "floaters" or "hazy membrane" in the left eye even though he was clearly aware of it because he had mentioned the "hazy membrane" in the Exertional Limitations section. R. 221.

Even if the ALJ or the AC did not consider Plaintiff's "floaters" to be a severe impairment in and of itself, they were required to consider the combined effect of all of his impairments in determining whether his physical and mental impairments were sufficiently severe. 42 U.S.C. § 423(d)(2)(B). They must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Because the AC exclusively relied on Dr. Bigsby's RFC opinion and failed to credit, or even

---

[2]Dr. Ganiban uses the abbreviation of OS, which is the Latin term "oculus sinister" for "left eye," and OD for "oculus dexter," which is Latin for the right eye.

-7-

mention, Dr. Ganiban's opinion[3] or treatment notes, particularly with regard to Plaintiff's left eye "floaters" and "hazy membrane," the AC's opinion was not based on substantial evidence.

### B. Reliance on the grids

Plaintiff also contends that the AC should not have relied exclusively on the grids, and should have obtained VE testimony, or at least considered the testimony of the VE at the hearing held by the ALJ. Once the ALJ finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific

---

[3]The ALJ gave "some weight" to Dr. Ganiban's opinion but found it indicated that Plaintiff's condition was not as severe as alleged. R. 21.

finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

At the hearing, the VE was asked in the hypothetical whether there were any jobs a person could perform who had vision in only one eye, and under strain would have problems focusing or completing tasks occasionally, and experienced floaters, and had difficulty in unfamiliar areas such as with steps. R. 58-60 (applying Dr. Ganiban's opinion on R. 342). The VE testified that there were no jobs a person with such restrictions could perform. R. 58-60. The AC relied exclusively on the grids to find that Plaintiff was not entitled to benefits at age 52, as an individual "closely approaching advanced age." The AC did not consider any new VE testimony or the testimony from the ALJ's hearing, despite its finding that Plaintiff's visual impairment, albeit limited to his right eye, was severe. R. 7. Because the AC erred in failing to consider Plaintiff's vision issues in his left eye either as severe or in combination with the severe visual impairment in his right eye, its decision was not based on substantial evidence. The AC also erred in failing to appropriately consider Plaintiff's visual impairments in *both* eyes in determining if there were other jobs he could perform in the national economy.

### C. Depression

Plaintiff argues that the medical evidence reflected depression and his treatment for depression.

Both the ALJ and the AC failed to find Plaintiff's depression to be severe at Step 2. The AC did not address any of the treatment records for Plaintiff's depression. Plaintiff argues that when the AC decided to review the ALJ's unfavorable decision, it had a duty to consider all of Plaintiff's impairments, both singly and in combination.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that his impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The Commissioner's fact-specific, tailored argument on this point consists of exactly two sentences and a footnote to the effect that Dr. Williamson's treatment summary of Plaintiff's disability is "not specific." (Doc. 16 at 6). The Commissioner also argues that Plaintiff has been treated conservatively for his depression, receiving medications and occasional out-patient follow up sessions R. 318-20. Plaintiff argues that the ALJ did not have substantial evidence to find Plaintiff's depression was not severe, and failed to cite any conflicting medical evidence.

Plaintiff's treating psychologist, Jeffrey Williamson, PhD, treated Plaintiff for depression from December 2007 through November 2008 following Plaintiff's job loss as a pilot and his repeated failed eye surgeries[4]. R. 317. In a letter dated November 20, 2008, Dr. Williamson summarized his treatment of Plaintiff, identifying the symptoms of depression he exhibited over the course of treatment. R. 317. Dr. Williamson opined that Plaintiff was severely depressed; dysphoric, irritable, withdrawn, and despairing; feeling increasingly hopeless; and his self-worth was marginal; he experienced sleep disturbances, anhedonia, and powerlessness; he was apprehensive, agitated and worried. R. 317. Dr. John Knappman, Plaintiff's primary care physician, treated the depression with antidepressants. R. 320-24.

---

[4]Plaintiff's mother had also died three months before. R. 317.

On remand, the Commissioner will consider Plaintiff's depression in combination with his visual impairments as set forth above.

## IV. CONCLUSION

Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on June 29, 2012.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record